## King v. City of Pineville, et al.

(Decided December 7, 1927.)

## Motion to Dissolve Injunction.

1. Indictment and Information.—Term "indictable offense," as used in Constitution, section 12, providing that no person for an indictable offense shall be proceeded against criminally by information except in certain cases, has reference to common-law offenses or to statutory offenses, punishments for which are infamous.

2. Indictment and Information.—Modern test in determining whether an offense is infamous requiring an indictment is the nature of the punishment inflicted.

3. Indictment and Information.—Since Ky. Stats., section 1309, requires that one convicted for first offense of carrying concealed and deadly weapon shall, in addition to fine and imprisonment, be excluded from right of suffrage for period of two years, it is an

"infamous offffense," which requires an indictment, under Constitution, section 12.

4. Indictment and Information.—Part of Ky. Stats., section 1093, as amended by Laws 1924, c. 43, purporting to vest in courts of justice of the peace, which have no machinery for grand jury, jurisdiction to try first offense of carrying concealed and deadly weapons, held unconstitutional, since such offense requires an indictment, under Constitution, section 12.

5. Criminal Law.—Police court of city of Pineville, which is a city of the fourth class, held without jurisdiction, under Constitution, section 143, and Ky. Stats., section 3513, giving police courts such criminal jurisdiction as justices of the peace have, to try one for first offense of carrying concealed and deadly weapon in violation of section 1309, since so much of section 1093, as amended by Laws 1924, c. 43, purporting to vest in justices' courts jurisdiction of such offense, is unconstitutional under Constitution, section 12, requiring indictment, and even if police courts may impanel grand jury under Criminal Code of Practice, section 307, such courts have no jurisdiction, since justices of the peace have no jurisdiction.

JAMES S. GOLDEN for plaintiff.

E. B. WILSON for defendants.

OPINION OF THE COURT BY JUDGE DIETZMAN—Overruling motion to dissolve injunction.

This case is before me on a motion to dissolve a temporary injunction granted by the judge of the Bell circuit court enjoining the execution of a judgment of the police court of Pineville against the present plaintiff.

The plaintiff in this action was tried in the police court of Pineville for the first offense of carrying a concealed and deadly weapon. He was found guilty and fined the sum of $50, and sentenced to confinement in the Bell county jail for a period of 10 days. He was also adjudged to be disfranchised and excluded from the right of suffrage for the period of 2 years from the date of the judgment. Contending that the police court of Pineville was without jurisdiction to try him for the named offense, the plaintiff herein brought this action to enjoin the execution of the judgment referred to with the result as above set out. The chancellor rested his decision on the case of Smiddy v. Commonwealth, 214 Ky. 100, 282 S. W. 774, wherein we held without discussion that a police court has no jurisdiction to try one for the offense of carrying concealed and deadly weapons. The defendants in this action insist that the decision of this court in Smiddy v. Commonwealth is erroneous.

The argument of the defendants runs thus: Section 143 of the Kentucky Constitution provides that police courts may have such criminal jurisdiction within the corporate limits of the city or town in which they are established as justices of the peace have. The statutes governing cities of the fourth class, of which Pineville is one, vest in the police courts of such cities "original concurrent jurisdiction" within the limits of such cities of all offenses within the jurisdiction of justices of the peace. See Kentucky Statutes, section 3513. Section 1093 of the Kentucky Statutes, as amended by chapter 43 of the Acts of 1924, specifically vests in the courts of justices of the peace jurisdiction of the offenses of petit larceny, vagrancy, and first offense of carrying concealed and deadly weapons. In Stone v. City of Paducah, 120 Ky. 322, 86 S. W. 531, 27 Ky. Law Rep. 717, this court said that section 143 of the Constitution does not place any limitation upon the jurisdiction which may be granted to justices of the peace by the General Assembly, but leaves the matter within its discretion, but does limit the jurisdiction to try common-law or statutory offenses that may be given to police and city courts to whatever the justices have. Hence the Legislature had the right to vest the trial of the first offense of carrying concealed and deadly weapons in the courts of justices of the peace, as was done by the 1924 amendment to section 1093 of the Statutes, and as the Constitution authorized, and the charters of the cities of the fourth class vested, the same jurisdiction in police courts of that class of cities as justices of the peace have, therefore the police court of Pineville did have jurisdiction to try the case against the plaintiff it did. Of course, the fundamental premise on which the conclusion of the defendants rests is that the Legislature had the right to vest in courts of justices of the peace jurisdiction to try the first offense of carrying concealed and deadly weapons. By section 1309 of the Kentucky Statutes the first offense of carrying a concealed and deadly weapon is declared a high misdemeanor and, in addition to the fine and imprisonment therein provided as a penalty, the statute requires that one convicted for the first offense of carrying a concealed and deadly weapon shall be excluded from the right of suffrage for the period of 2 years from the date of the judgment.

As stated in the case of Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632, courts of justices of the peace being

without the machinery necessary to cause indictments to be returned, if an offense, jurisdiction to try which is vested in the courts of justices of the peace, is an indictable offense, within the meaning of section 12 of the Constitution, which provides that no person for an indictable offense shall be proceeded against criminally by information except in certain cases not here material, any attempt to prosecute such an offense by warrant or information would be unauthorized, and hence the attempt to vest jurisdiction to try such an offense in the courts of justices of the peace which have no machinery for a grand jury would be unconstitutional. Is the offense denounced by section 1309 of the Statutes one which must be proceeded against by an indictment as provided by section 12 of the Constitution? In the Lakes case, supra, we said:

"It has, however, been consistently held that the term 'indictable offense,' as used in this section (12) of the Constitution, has reference to common-law offenses, or to statutory offenses, the punishments for which are 'infamous.' "

What, then, is an infamous offense which requires an indictment? As said in 16 C. J. 60, the old test to determine whether a crime was infamous or not rested on the character of the crime rather than the nature of the punishment inflicted, but the modern view is that it is determined by the nature of the punishment. It is true in the Lakes case, supra, we said that "infamous punishment," as held in this jurisdiction, is death or imprisonment in the penitentiary of the state following a conviction for a felony. This definition, however, was not meant to be exclusive as the Lakes case presented only the question whether or not mere confinement in a county jail for a misdemeanor, although attended with hard labor, was an infamous punishment, it being held not so. Does the fact that in addition to a fine and imprisonment a person is deprived of his right of suffrage for a period of 2 years render the punishment infamous and thus the crime such? In the case of Cheek v. Commonwealth, 87 Ky. 42, 7 S. W. 403, 9 Ky. Law Rep. 880, the facts were that the appellant was convicted of the offense of receiving a bribe to vote for certain candidates in an election. Section 11 of Article 12 of chapter 33 of the General Statutes then in force provided as a punishment for the receiving of such a bribe

a fine of from $50 to $500, together with the exclusion from office and suffrage. In speaking to the last part of the penalty this court said:

> "And while the pecuniary fine of $50 only was imposed upon the appellant, yet judgment was also rendered against him depriving him of his right to vote and to hold office. This is a penalty attached to all infamous crimes or offenses, which is not only a badge of disgrace and infamy, but deprives the party of a most sacred right."

Earlier in the opinion the court said that the statute in that case made the offense of bribery or being bribed to vote at an election infamous. As a matter of fact, the statute did not so provide in express terms, and the court made the statement it did because of the fact that the penalty of deprivation of suffrage, being attached to the other penalties provided, made the offense an infamous one. In the case of Johnson v. Commonwealth, 90 Ky. 53, 13 S. W. 520, 12 Ky. Law Rep. 20, the Cheek case was referred to with approval. Therein we said that the infliction of a punishment of deprivation of suffrage degrades the offender. The Cheek case has also been referred to in many other opinions of this court, the latest of which that we have been able to find being Bailey v. Commonwealth, 198 Ky. 629, 249 S. W. 779.

It follows from the foregoing that by attaching to the penalties of fine and imprisonment that of deprivation of suffrage as set out in Kentucky Statutes, section 1309, the Legislature has made the offense of carrying a concealed and deadly weapon an infamous one which, being true, it is such an offense that can be proceeded against only by an indictment. It necessarily follows that the Legislature could not constitutionally vest in courts of justices of the peace, which have no machinery for a grand jury, jurisdiction to try such an offense, and that so much of section 1093 of the Statutes as amended in 1924 as purports to vest in courts of justices of the peace which have no machinery for a grand jury jurisdiction to try the first offense of carrying concealed and deadly weapons is unconstitutional. The major premise of defendants' argument thus being unsound, it follows that the rest of their argument must fall, and that the Smiddy case is correct and is not subject to the criticism

made by them. We have not overlooked section 307 of the Criminal Code which provides:

> "If the police or city court have jurisdiction of offenses which can only be prosecuted by indictment, the court may order the peace officer, whose duty it is to attend the court, to summon a competent number of grand jurors, the qualifications of whom shall be as prescribed in the General Statutes (now Kentucky Statutes), and who shall be sworn, and have the powers and duties prescribed in chapter I of title VI."

Without entering into a discussion of the scope of that section or whether it is under the present Constitution and Statutes, valid or not, we are of opinion that it cannot save the defendants' position. As stated in the Stone case, supra, while police courts may have the same jurisdiction to try common-law or statutory offenses as have courts of justices of the peace, they cannot be vested with jurisdiction to try such offenses unless the courts of justices of the peace have like jurisdiction. Even so, if we concede that police courts under the section of the Criminal Code we have quoted, may summon and impanel a grand jury, a question we expressly do not herein decide, yet as justices of the peace do not have the machinery for a grand jury, it follows that police courts cannot be vested with jurisdiction to try offenses which may be prosecuted only by an indictment so long as courts of justices of the peace are not vested with like jurisdiction. We are, therefore, of the opinion that the police court of Pineville was without jurisdiction to try the plaintiff as it herein attempted to do, and that the lower court correctly enjoined the enforcement of the judgment.

The whole court, except Judge Sampson, who was absent, sat with me in the consideration of this case and concurs in these views and in this opinion. Due to the importance of the question presented, it is ordered by the court that this opinion be published in the official reports for the guidance of the inferior courts of the state.

The motion to dissolve the temporary injunction herein granted is overruled.